UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RYAN SLOWIK AND VALERIE SLOWIK, individually and on behalf of their minor children, A.S. and T.S., <br><br> Plaintiffs, <br><br> v. <br><br> KEITH LAMBERT and SHELLI LAMBERT, <br><br> Defendants. | Civil Action No. 3:19-cv-501 |

## **FIRST AMENDED COMPLAINT and DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 15(a)(1), and for their claims against the Defendants, Plaintiffs allege as follows:

### PARTIES

1.  Plaintiff Ryan Slowik is an adult resident of Knoxville, Knox County, Tennessee, and the father of A.S. and T. S.

2.  Plaintiff Valerie Slowik is an adult resident of Knoxville, Knox County, Tennessee, and the mother of A.S. and T.S.

3.  Plaintiff A.S. is ten years old and resides with her parents in Knoxville, Knox County, Tennessee.

4.  Plaintiff T.S. is eleven years old and resides with his parents in Knoxville, Knox County, Tennessee.

1

5.    Defendant Keith Lambert is an adult resident citizen of Knoxville, Knox County, Tennessee.

6.    Defendant Shelli Lambert is an adult resident citizen of Knoxville, Knox County, Tennessee.

7.    All claims in this civil action are against Defendants in their individual capacity.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the Plaintiffs have brought a claim for relief pursuant to 42 U.S.C. § 1983.

9.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, based upon supplemental jurisdiction for the state law claims.

10.   Based upon its supplemental jurisdiction, this Court should exercise its pendent jurisdiction because the Plaintiffs' state law claims derive from the common nucleus of operative fact of the federal claims and all such claims are so interrelated that they may be fairly and efficiently disposed of in one lawsuit.

11.   Venue is properly set within this district pursuant to 28 U.S.C.S. § 1391(b), because all Defendants reside in the Eastern District of Tennessee and the events upon which this suit are based occurred in this judicial district.

## FACTS

12.   The Slowik family lives in a neighborhood in the Hardin Valley area of Knoxville, Tennessee.

13.   Mr. Slowik coached for more than ten years in the NFL, with teams including the Denver Broncos, Arizona Cardinals, New York Jets, and Cleveland Browns.  The Slowik family moved to Tennessee for Coach Slowik to work as a defensive analyst for the University of

Tennessee Volunteers.  When Coach Slowik left the University of Tennessee, the Slowik family decided to stay in Knoxville.  Coach Slowik now coaches the football team at a local Knoxville high school.

14.     On Wednesday, July 24, 2019, Defendant Keith Lambert was the Assistant Chief of Police for the University of Tennessee Police Department.

15.     His wife, Defendant Shelli Lambert is a Captain with the Knox County Sheriff's Department.

16.     On Wednesday, July 24, 2019, Keith Lambert was on call with the UTPD when he left work early in his unmarked police cruiser.

17.     On Wednesday, July 24, 2019, Shelli Lambert was also working.

18.     At approximately 5:45 on the evening of Wednesday, July 24, 2019, while Plaintiffs were at their home, and while it was still daylight, Keith Lambert drove his unmarked UT police vehicle into the Slowiks' driveway and parked it in a manner so as to block Plaintiffs' vehicles in their garage and prevent them from leaving.

19.     Keith Lambert then exited his vehicle and, uninvited, entered the garage attached to the Slowik family home, brandishing his pistol.

20.     Mrs. Slowik and her ten-year-old daughter exited the door from the Slowik family home into the garage, unaware that Keith Lambert was waiting for them.

21.     Mrs. Slowik and her daughter were unarmed and in their own home.

22.     They did not pose any threat of violence to Keith Lambert or anyone else, and never said anything that constituted a threat or indicated any danger to Keith Lambert or anyone else.

23.     The garage where Keith Lambert waited for the Slowiks was full of the typical indicators of a home lived in by a family with children:  family cars, refrigerator, balls, toys, and a pink bicycle.

24.     When Mrs. Slowik exited her home into the garage, she saw Keith Lambert, appearing disheveled and with gun in hand.

25.     Keith Lambert yelled at Mrs. Slowik and her daughter, "What the fuck are you doing here?  This is my fucking house!"

26.     Keith Lambert repeatedly yelled that he was a "cop," and continued to scream at Mrs. Slowik and her daughter, waiving his gun at them and saying things such as, "I'm a cop! Get out of my fucking house!"

27.     Mrs. Slowik and her daughter thought that Keith Lambert was going to kill them.

28.     The Slowiks' son, age 11, then came to the door from the kitchen into the garage.

29.     Keith Lambert continued to scream and curse at the mother, daughter, and son.

30.     The son had recently broken his foot and was in a cast.  As he later told investigators, he knew he could not run away, so he simply waited for the bullets from Lambert's gun to hit his body.

31.     As Keith Lambert continued to scream, curse, and threaten the family with his gun, Coach Slowik exited the door from the kitchen into the garage.

32.     Keith Lambert screamed at Coach Slowik, "Who the fuck are you?!?!"

33.     He then continued to brandish his gun and yell at them, saying, among other things, "I'm a cop!  This is my fucking house!"

4

34.     At all relevant times, Coach Slowik and his minor son were unarmed, did not pose any threat of violence to Keith Lambert or anyone else, were in their own home, and never said anything that constituted a threat or indicated any danger to Keith Lambert or anyone else.

35.     Keith Lambert was unknown to the Slowiks and appeared to them to be off, irrational, impaired, intoxicated, crazy, psychotic, manic, angry, and out of his mind.

36.     Coach Slowik was very careful to speak calmly to Keith Lambert, as he was afraid that Keith Lambert would start shooting the unarmed family.

37.     The Slowiks informed Defendant Lambert that it was their property and that they lived there.

38.     Mr. and Mrs. Slowik observed that Lambert's gun was pointed primarily at the neck and shoulder of their ten-year-old daughter.

39.     Coach Slowik carefully stepped in front of his wife and daughter, to shield them from Keith Lambert's gun and, in response, Defendant Lambert moved toward Coach Slowik with his gun in a more aggressive posture.

40.     The Slowiks' minor daughter began screaming and collapsed to the floor as a result of Keith Lamberts' conduct.

41.     The daughter's scream appeared to penetrate the impaired mental state of Keith Lambert so that he "woke up" and realized where he was.

42.     Keith Lambert asked Coach Slowik to step outside, so he could speak with him privately.

43.     Coach Slowik refused and told Keith Lambert to leave.

44.     As Lambert returned to his unmarked UT police cruiser with his gun in his hand, he again stated that he was a "cop."

45.     Coach Slowik asked him, "You're a cop?"

46.     Keith Lambert replied, "Yes, yes," and nodded affirmatively.

47.     Keith Lambert drove his unmarked UT police cruiser to the driveway of the house next door and went into the house.

48.     The Slowiks got in their car to escape and called 911.

49.     While the Slowiks were waiting for Sheriff's deputies to meet them at a nearby location, Lambert called his wife, defendant Shelli Lambert, a Captain in the records office of the Sheriff's department.

50.     Shelli Lambert drove to the house where Lambert was hiding, in an unmarked Sheriff's cruiser.

51.     Policies of both Lamberts' employers required them, as officers of the law, to stay, identify themselves, and immediately report what had happened.

52.     Nevertheless, Keith Lambert got into the passenger seat of the unmarked Sheriff's cruiser, and Shelli Lambert drove him away from the scene before law enforcement arrived.

53.     When Sheriff's deputies arrived, Lambert was gone, and they did not know who or where he was.

54.     Although both Keith Lambert and Shelli Lambert were law enforcement officers with a duty to report incidents such as this, neither Defendant Keith Lambert nor Defendant Shelli Lambert reported the incident on July 24, 2019.

55.     Instead, Keith Lambert, upon information and belief, stayed at their residence while Shelli Lambert went to work at the Sheriff's Department the following morning.

56.     Shelli Lambert used her position as a Captain in the records department to review reports of pending investigations, to see if Keith Lambert had been reported.

6

57.     Only after Shelli Lambert, using her access to the Sheriff's investigation records, confirmed the following day that there was an open investigation with the Sheriff's Department's Serious Crimes Unit did Keith Lambert report the incident.

58.     While Keith Lambert was hiding at the residence he shared with Shelli Lambert, his blood alcohol levels and other evidence of intoxication were dissipated, metabolized, and spoliated.

59.     The University of Tennessee Police Department's own internal affairs report noted the "potential use of drugs or alcohol."

60.     However, Mrs. Lambert, a Captain in the Knox County Sheriff's Department, removed Lambert from the scene and hid him at their residence while any substances in his system metabolized, and the Knox County Sheriff's Department took no action to obtain a toxicology report to determine whether there was any positive indication of recent drug use by Defendant Lambert.

61.     Lambert's conduct was egregious and criminal in nature.

62.     Prior to the discovery of Lambert's identity, Lambert's conduct was being investigated by the Knox County Sheriff's Office as aggravated assault.

63.     After it became known that Keith Lambert was an officer with the University of Tennessee Police Department, and that his wife was an officer with the Sheriff's Office, the Knox County District Attorney declined to indict Defendant Lambert.

64.     Despite the egregious and criminal nature of Defendant Lambert's conduct, the University of Tennessee allowed Lambert to retire with all benefits intact and took no other action.

65.     At no time did Plaintiffs present an immediate threat to Defendant Lambert.

66. At no time did Plaintiffs attempt to flee.

67. Plaintiffs have no criminal record.

68. Plaintiffs acted reasonably and in no way were negligent.

69. Plaintiffs did not cause or contribute to cause the incident complained of.

70. In the ensuing investigation, Keith Lambert told several lies in an attempt to make his actions appear more reasonable.

## COUNT I
## <u>VIOLATIONS OF 42 U.S.C. § 1983 – KEITH LAMBERT</u>

71. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

72. Because he was on call; in repeatedly announcing that he was a police officer, a "cop;" in using a police vehicle; in brandishing his police gun; in giving commands of a type given by police officers; and in other ways to be proven at trial, Keith Lambert was at all relevant times acting under color of law.

73. The actions of Keith Lambert, in hiding away while he metabolized any substances in his system, and in monitoring the pending investigation against him through Shelli Lambert, and in other ways to be proven at trial, deprived the Plaintiffs of their constitutionally protected rights, including their right to access the courts and to due process of law.

74. Defendant Keith Lambert's actions were committed in violation of the Constitution of the United States of America including but not limited to the fourth, fifth, and/or fourteenth amendments thereto, and deprived Plaintiffs of their rights thereunder.

75. Defendant Keith Lambert acted with deliberate indifference to Plaintiffs' constitutionally protected rights.

76. Defendant Keith Lambert deprived Plaintiffs of their constitutionally protected right to be free from unlawful detention or seizure.

77.     Defendant Keith Lambert used a degree of force that was unreasonable under the circumstances, and deprived Plaintiffs of their constitutionally protected right to be free from the excessive use of force.

78.     Defendant Keith Lambert deprived Plaintiffs of their liberty by subjecting them to unwarranted and unreasonable restraints on their persons, without due process, in violation of their rights under the fifth amendment.

79.     The acts and omissions of Defendant Keith Lambert were outrageous and were a product of reckless or callous indifference to Plaintiffs' constitutionally protected rights.

80.     In violating Plaintiffs' constitutionally protected rights, Defendant Keith Lambert was grossly negligent.

81.     As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs' civil rights were violated.

82.     Defendant Keith Lambert is not entitled to qualified immunity with respect to the incident at issue.

83.     As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions Plaintiffs sustained injuries and/or damages.

## COUNT II
## VIOLATIONS OF 42 U.S.C. § 1983 – SHELLI LAMBERT

84.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

85.     Defendant Shelli Lambert, in using her Sheriff's car, and in using her position as a Captain in the Knox County Sheriff's Department to acquire information regarding the investigation pending against her husband, acted under color of state law and with deliberate indifference to Plaintiffs and their rights.

9

86. The actions of Shelli Lambert, in secreting Keith Lambert away while he metabolized any substances in his system, and in monitoring the pending investigation against Keith Lambert, and in other ways to be proven at trial, deprived the Plaintiffs of their constitutionally protected rights, including their right to access the courts and to due process of law.

87. Defendant Shelli Lambert, acting under color of state law with deliberate indifference, deprived the Plaintiffs of their rights to meaningful, effective, and adequate judicial access to seek redress.

88. In violating Plaintiffs' constitutional rights, Defendant Shelli Lambert acted intentionally, maliciously, and recklessly.

89. As a direct and proximate result of Defendant Shelli Lambert's acts and/or omissions, Plaintiffs' civil rights were violated.

90. As a direct and proximate result of Defendant Shelli Lambert's acts and/or omissions, Plaintiffs sustained injuries and/or damages.

## COUNT III
## VIOLATIONS OF 42 U.S.C. § 1983 – SHELLI LAMBERT AND KEITH LAMBERT CONSPIRACY

91. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

92. In committing the acts complained of, Defendant Shelli Lambert and Defendant Keith Lambert both acted under color of state law.

93. Defendant Shelli Lambert and Defendant Keith Lambert, acting under color of state law and with deliberate indifference to Plaintiffs and their rights, with the intent and knowledge of the other's intent, had a common design and/or agreement.

94. Defendant Shelli Lambert and Defendant Keith Lambert, through concerted action, for an unlawful purpose, left the scene of the incident at issue and/or made Defendant

10

Lambert unavailable for questioning or inspection immediately following his unlawful conduct so as to thwart a lawful investigation.

95.     Defendant Shelli Lambert and Defendant Keith Lambert's concerted action to make Defendant Keith Lambert unavailable for questioning or inspection impeded Plaintiffs' meaningful, effective, and adequate judicial access to seek redress for the incident at issue and the constitutional violations of the same.

96.     Defendant Shelli Lambert and Defendant Keith Lambert impeded Plaintiffs' meaningful, effective, and adequate judicial access by obscuring important facts about the incident including, but not limited to, rendering it impossible for any drug or alcohol test to be performed on Defendant Keith Lambert.

97.     As a direct and proximate result of Defendant Shelli Lambert and Defendant Keith Lambert's acts and/or omissions, Plaintiffs sustained injuries and/or damages and violations of their constitutional rights.

## COUNT IV
## <u>NEGLIGENCE – KEITH LAMBERT</u>

98.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

99.     Defendants owed a duty of care to Plaintiffs.

100.    Defendants' acts and/or omissions breached the duty of care owed to Plaintiffs.

101.    Defendants' acts and/or omissions amounted to negligence.

102.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs suffered injuries and damages including, but not limited to:

    a.  Pain and suffering of a past, present and future nature;

    b.  Emotional distress; and

    c.  Mental anguish.

11

103.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs have and/or will incur expenses.

## COUNT V
## NEGLIGENCE *PER SE* – KEITH LAMBERT

104.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

105.     At all relevant times, Defendant Keith Lambert was subject to the laws of the State of Tennessee and the United States of America.

106.     At all relevant times, Defendant Keith Lambert had a duty to comply with the laws of the State of Tennessee and the United States of America.

107.     Defendant Keith Lambert violated one or more laws and regulations and breached the duty of care that was owed to Plaintiffs.

108.     Defendant Keith Lambert was guilty of violating one or more of the following statutes of the State of Tennessee and/or the United States of America, which were in full force and effect at the time of the incident described herein, said violations constituting negligence per se and which were a direct and proximate cause of the injuries and/or damages incurred:

a. 18 USC 242 – Deprivation of Rights Under Color of Law

b. 18 USC 926B – Carrying a Concealed Firearm by Qualified Law Enforcement Officers

c. TCA 39-12-103 – Criminal Conspiracy

d. TCA 39-13-101 – Assault

e. TCA 39-13-102 – Aggravated Assault

f. TCA 39-13-103 – Reckless Endangerment

g. TCA 39-15-401 – Child Abuse and Child Neglect or Endangerment

h. TCA 39-16-402 – Official Misconduct

12

i.   TCA 39-14-405 – Trespassing

j.   TCA 39-13-302 – False Imprisonment

109.    Keith Lambert also was subject to policies and procedures of the University of Tennessee Police Department, which he violated in his actions as alleged herein, and as reported in the University's own report.

110.    The violation of the above described duties and statutes was the cause in fact and proximate cause of the injuries and damages Plaintiffs sustained.

111.    As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs suffered injuries and damages including but not limited to:

a.   Pain and suffering of a past, present and future nature;

b.   Emotional distress; and

c.   Mental anguish.

112.    As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs have and/or will incur expenses.

**COUNT VI**
**NEGLIGENCE *PER SE* – SHELLI LAMBERT**

113.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

114.    At all relevant times, Defendant Shelli Lambert was subject to the laws of the State of Tennessee and the United States of America.

115.    At all relevant times, Defendant Shelli Lambert had a duty to comply with the laws of the State of Tennessee and the United States of America.

116.    Defendant Shelli Lambert violated one or more laws and regulations and breached the duty of care that was owed to Plaintiffs.

117. Defendant Shelli Lambert was guilty of violating one or more of the following statutes of the State of Tennessee and/or the United States of America, which were in full force and effect at the time of the incident described herein, said violations constituting negligence per se and which were a direct and proximate cause of the injuries and/or damages incurred:

    a. 18 USC § 242 – Deprivation of Rights Under Color of Law

    b. TCA § 39-16-402 – Official Misconduct

118. Shelli Lambert also was subject to policies and procedures of the Knox County Sheriff's Office, which she violated in her actions as alleged herein.

119. Violation of the above described duties and statutes was the cause in fact and proximate cause of injuries and damages Plaintiffs sustained, including but not limited to anxiety and mental anguish from now knowing who or where their assailant was after Shelli Lambert helped him to leave and hide.

120. As a direct and proximate result of Defendant Shelli Lambert's acts and/or omissions, Plaintiffs have and/or will incur expenses.

## COUNT VII
## ASSAULT

121. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

122. Defendant Keith Lambert intentionally and/or recklessly attempted to do harm to, or to frighten, Plaintiffs.

123. Defendant Keith Lambert's conduct amounted to the unmistakable appearance of an intentional attempt to do harm to, or to frighten, Plaintiffs.

124. Defendant Keith Lambert, at all times pertinent, had the present ability or the unmistakable appearance of the present ability to do harm to, or to cause fright in, Plaintiffs.

125. As a direct and proximate result of Defendant Keith Lambert's conduct, Plaintiffs were injured and/or damaged.

126. As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs suffered injuries and damages including but not limited to:

      a. Pain and suffering of a past, present and future nature;

      b. Emotional distress; and

      c. Mental anguish.

127. As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs have and/or will incur expenses.

128. For his intentional and reckless conduct, punitive damages should be awarded.

## COUNT VIII
## FALSE IMPRISONMENT

129. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

130. Defendant Keith Lambert unlawfully violated the personal liberty of the Plaintiffs.

131. Defendant Keith Lambert intentionally, recklessly, and unlawfully restrained, confined, or detained Plaintiffs.

132. Defendant Keith Lambert's conduct, including the use of force and/or threatened use of force, caused Plaintiffs to be restrained, confined, and/or detained against their will.

133. Plaintiffs were, at all times pertinent, conscious of the restraint, confinement, or detention Defendant Keith Lambert caused.

134. Plaintiffs did not consent to the restraint, confinement, or detention Defendant Keith Lambert caused.

15

135. The restraint, confinement, or detention Defendant Keith Lambert caused was in no way privileged or authorized.

136. As a direct and proximate result of the unlawful restraint, confinement, or detention Defendant Keith Lambert caused, Plaintiffs were injured and/or damaged.

137. As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs suffered injuries and damages including but not limited to:

    a. Pain and suffering of a past, present and future nature;

    b. Emotional distress; and

    c. Mental anguish.

138. As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs have and/or will incur expenses.

139. For his intentional and reckless conduct, punitive damages should be awarded.

## COUNT IX
## INVASION OF PRIVACY

140. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

141. Plaintiffs had a right to be free from invasions of their privacy while in or on their property.

142. Defendant Keith Lambert intentionally intruded upon the Plaintiffs' solitude or seclusion or the private affairs or concerns of the Plaintiffs.

143. Defendant Keith Lambert's intrusion was highly offensive.

144. Defendant Keith Lambert's intrusion caused injury and/or damage to Plaintiffs.

145. As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs suffered injuries and damages including but not limited to:

    a. Pain and suffering of a past, present and future nature;

16

b. Emotional distress; and

c. Mental anguish.

146. As a direct and proximate result of Defendant Keith Lambert's acts and/or omissions, Plaintiffs have and/or will incur expenses.

147. For his intentional and reckless conduct, punitive damages should be awarded.

**COUNT X**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – SHELLI LAMBERT**

148. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

149. Defendant Shelli Lambert acted negligently, recklessly, intentionally, and/or maliciously in her involvement in the altercation between Defendant Keith Lambert and the Plaintiffs.

150. Plaintiffs each personally witnessed the acts and/or omissions of Defendant Keith Lambert.

151. Plaintiffs reasonably believed that they were going to be seriously injured or killed as a result of Defendant Keith Lambert's actions.

152. Defendant Shelli Lambert arrived at the scene before other police or officials could arrive.

153. Defendant Shelli Lambert, despite the pending investigation into who held the Plaintiffs at gun point occurring in the evening and night of the altercation, drove Defendant Keith Lambert away from the scene and neither Defendant returned.

154. Upon information and belief, Defendant Shelli Lambert fled the scene with Defendant Keith Lambert in her Chevrolet Impala issued by the Knox County Sheriff's Office.

17

155.     Defendant Shelli Lambert kept Defendant Keith Lambert away from the scene of his assault on the Plaintiffs and away from the ongoing investigation by the Knox County Sheriff's Office.

156.     During the time between the assault at approximately 6:00 p.m. on Wednesday July 24, 2019, and when Defendant Keith Lambert reported his actions at approximately 12:30 p.m. on Thursday, July 25, 2019, Plaintiffs feared the man who assaulted them could easily return to their home to continue to threaten or harm them.

157.     While Defendants Shelli and Keith Lambert were avoiding the scene and the Knox County Sheriff's Office investigation, Plaintiffs experienced reasonable, foreseeable, and severe mental anguish over the fact the investigating officers could not locate the man who assaulted them.

158.     As a direct and proximate result of Defendant Shelli Lambert and Defendant Keith Lambert's acts and/or omissions, Plaintiffs sustained significant impairment to their daily life.

159.     Defendant Shelli Lambert and Defendant Keith Lambert's negligence caused a serious mental injury to Plaintiffs.

160.     As a direct and proximate result of Defendant Shelli Lambert and Defendant Keith Lambert's acts and/or omissions, Plaintiffs suffered injuries and damages including but not limited to:

      a.   Pain and suffering of a past, present and future nature;

      b.   Emotional distress; and

      c.   Mental anguish.

18

161.    As a direct and proximate result of Defendant Shelli Lambert and Defendant

Keith Lamberts' acts and/or omissions, Plaintiffs have and/or will incur expenses.

162.    For her intentional, reckless, and malicious conduct, punitive damages should be

awarded.

## COUNT XI
## OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – KEITH LAMBERT

163.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

164.    Defendant Keith Lambert acted negligently, recklessly, intentionally, and/or

maliciously in his interactions with Plaintiffs.

165.    Defendant Keith Lambert's  acts and/or omissions were so outrageous that that

they are not tolerated by a civilized society.

166.    Defendant Keith Lambert's acts and/or omissions caused serious mental injury to

Plaintiffs.

167.    As a direct and proximate result of Defendant Keith Lambert's  acts and/or

omissions, Plaintiffs suffered injuries and damages including but not limited to:

     a.   Pain and suffering of a past, present and future nature;

     b.   Emotional distress; and

     c.   Mental anguish.

168.    As a direct and proximate result of Defendant Keith Lambert's acts and/or

omissions, Plaintiffs have and/or will incur expenses.

169.    For his intentional and reckless conduct, punitive damages should be awarded.

## COUNT XII
## TRESPASS – KEITH LAMBERT

170.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

19

171.   Defendant Keith Lambert entered onto Plaintiffs' property without actual or implied permission.

172.   As a direct and proximate result of Defendant Keith Lambert's conduct and his entry upon their land without permission, authority or consent, Plaintiffs sustained injuries and/or damages.

## COUNT XIII
### SPOLIATION – KEITH AND SHELLI LAMBERT

173.   Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

174.   Keith and Shelli Lambert intentionally, recklessly, maliciously, fraudulently, and/or negligently removed Keith Lambert from the scene of his assault upon the Plaintiffs.

175.   As the intended, actual, and proximate result of the actions of Keith and Shelli Lambert, the law enforcement investigators and the Plaintiffs were deprived of relevant and material evidence regarding the actions and torts of Keith Lambert, to wit, the mental state, blood alcohol content, and other evidence of impairment, that they could have used in these claims against Keith Lambert.

176.   Plaintiffs were damaged as a direct and proximate result of the spoliation by Keith and Shelli Lambert.

177.   For their conduct in spoliating evidence relevant to this matter, punitive damages should be awarded against Keith and Shelli Lambert.

## COUNT XIV
### CIVIL CONSPIRACY – KEITH AND SHELLI LAMBERT

178.   Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

179.   Defendant Keith Lambert and his wife, Defendant Shelli Lambert, with intent and knowledge of the other's intent, had a common design.

180.    Upon information and belief, after his assault upon the Plaintiffs, Keith Lambert called Shelli Lambert and they formulated a scheme to spirit Keith Lambert away, hide him, and unlawfully spoliate evidence and deprive the Plaintiffs and law enforcement of information concerning his identity and his physical and mental condition.

181.    Upon information and belief, Keith and Shelli Lambert planned that Keith Lambert would remain hidden at their residence while Shelli Lambert accessed Sheriff's Department records to determine if there was an ongoing investigation.

182.    Defendant Keith Lambert and his wife, Defendant Shelli Lambert, through concerted action, for an unlawful purpose, carried out their conspiracy by leaving the scene of the incident at issue and/or making Defendant Lambert unavailable for questioning or inspection immediately following his unlawful conduct so as to thwart a lawful investigation.

183.    As a direct and proximate result of the concerted efforts of Defendant Keith Lambert and his wife, Defendant Shelli Lambert, Plaintiffs were injured or damaged.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, the Plaintiff hereby demands a trial by a jury.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby pray for the following:

1.    A judgment against Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial.

2.    A judgment against Defendants for punitive damages in an amount to be proven at trial.

3.    An award of costs and attorney's fees, as provided by applicable provisions of federal and state statutory and common law.

4. An award of pre- and post-judgment interest as permitted by law.

5. For all other relief, both general and specific, to which Plaintiffs may be entitled.

Respectfully submitted,


 /s/ Gregory Brown
Gregory Brown, BPR# 027944
Christopher Field, BPR# 028070
W. Scott Hickerson, BPR # 026369
LOWE YEAGER & BROWN PLLC
900 S. Gay Street, Suite 2102
Knoxville, TN  37902
Phone: (865) 521-6527
Fax: (865) 637-0540
gb@lyblaw.net
ccf@lyblaw.net
wsh@lyblaw.net


## CERTIFICATE OF SERVICE

No defendant having appeared in this matter, a true copy of this document will be being

served upon each Defendant with the Summons and Complaint in this matter.

 /s/ Gregory Brown
Gregory Brown

4818-0459-2047, v. 1