UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RYAN SLOWIK AND VALERIE,
SLOWIK, individually and on behalf of
their minor children, A.S. and T.S.,

       Plaintiff,

v.

KEITH LAMBERT and SHELLI
LAMBERT,

       Defendants.

Civil Action No. 3:19-cv-501

## PLAINTIFFS' OPPOSITION TO DEFENDANT KEITH LAMBERT'S PARTIAL MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiffs (collectively, "the Slowiks") respectfully oppose Defendant Keith Lambert's

Partial Motion to Dismiss. As a FED. R. CIV. P. 12(b)(6) motion tests the sufficiency of facts

alleged in a complaint, the strictly factual allegations of the First Amended Complaint are set

forth below.

## FACTS

On Wednesday, July 24, 2019, Defendant Keith Lambert was the Assistant Chief of

Police for the University of Tennessee Police Department. (Doc. 10, ¶ 14, PageID #: 38). That

day, Keith Lambert was on call when he left work early in his unmarked police cruiser. (Doc.

10, ¶ 16, PageID #: 38). While the Slowiks were at their home and while it was still daylight,

Keith Lambert drove his cruiser into the Slowiks' driveway and blocked the Slowiks' vehicles in

their garage, preventing them from leaving. (Doc. 10, ¶ 18, PageID #: 38). Keith Lambert then

exited his vehicle and, uninvited, entered the garage attached to the Slowiks' home, brandishing his pistol.  (Doc. 10, ¶ 19, PageID #: 38).

Plaintiff Valerie Slowik ("Mrs. Slowik") and her ten-year-old daughter, unarmed and in their own home, entered their garage from the house, unaware that Keith Lambert was waiting for them.  (Doc. 10, ¶¶ 20, 21, PageID #: 38).  Mrs. Slowik then saw Keith Lambert, who appeared disheveled and had a gun in hand.  (Doc. 10, ¶ 24, PageID #: 39).  Though the garage was full of the typical indicators of a home lived in by a family with children, such as family cars, a refrigerator, balls, toys, and a pink bicycle, Keith Lambert yelled at Mrs. Slowik and her daughter, "What the fuck are you doing here?  This is my fucking house!"  (Doc. 10, ¶¶ 23, 25, PageID #: 39).  Keith Lambert waved his gun at them and repeatedly yelled such things as, "I'm a cop!  Get out of my fucking house!"  (Doc. 10, ¶ 26, PageID #: 39).  Keith Lambert's behavior led Mrs. Slowik and her daughter to believe that Keith Lambert was going to kill them.  (Doc. 10, ¶ 27, PageID #: 39).

The Slowiks' eleven-year-old son then came to the garage door from the kitchen, and Keith Lambert continued screaming and cursing at the family.  (Doc. 10, ¶¶ 28, 29, PageID #: 39).  The son, believing his life in danger and knowing he could not run away due to his then-broken foot, simply waited for the bullets from Lambert's gun.  (Doc. 10, ¶ 30, PageID #: 39).  Then, when Plaintiff Ryan Slowik ("Coach Slowik") came to the garage, Keith Lambert screamed at him, "Who the fuck are you?!" and continued brandishing his gun, yelling, "I'm a cop!  This is my fucking house!"  (Doc. 10, ¶¶ 31-33, PageID #: 39).  Keith Lambert appeared irrational, impaired, intoxicated, crazy, psychotic, manic, angry, and out of his mind.  (Doc. 10, ¶ 35, PageID #: 40).  None of the Slowiks were armed, nor did they say or do anything threatening to Keith Lambert.  (Doc. 10, ¶¶ 21, 34, PageID #: 38, 40).

Fearing that Keith Lambert would start shooting the family, Coach Slowik calmly told Keith Lambert that it was their property and that they lived there. (Doc. 10, ¶¶ 36, 37, PageID #: 40). Coach Slowik observed that Keith Lambert's gun was pointed at the neck and shoulder of his ten-year-old daughter, so he carefully stepped in front of his wife and daughter to shield them. (Doc. 10, ¶¶ 38, 39, PageID #: 40). In response, Keith Lambert moved toward Coach Slowik with his gun in a more aggressive posture. (Doc. 10, ¶ 39, PageID #: 40).

The Slowiks' minor daughter began screaming and collapsed to the floor. (Doc. 10, ¶ 40, PageID #: 40). Her scream appeared to penetrate Keith Lambert's impaired mental state so that he "woke up" and realized where he was. (Doc. 10, ¶ 41, PageID #: 40). Keith Lambert then asked Coach Slowik to step outside so he could speak with him privately. (Doc. 10, ¶ 42, PageID #: 40). Upon Coach Slowik's refusal and command to leave, Keith Lambert returned to his police cruiser with gun in hand, repeating that he was a "cop." (Doc. 10, ¶¶ 43, 44, PageID #: 40). Keith Lambert then drove his cruiser to the driveway of the house next door and went into the house. (Doc. 10, ¶ 47, PageID #: 41).

The Slowiks got into their car to escape and call 911. (Doc. 10, ¶ 48, PageID #: 41). While the Slowiks awaited Sheriff's deputies to meet them at a nearby location, Keith Lambert called his wife, Defendant Shelli Lambert, a Captain in the records office of the Knox County Sheriff's Office. (Doc. 10, ¶ 49, PageID #: 41). In an unmarked Sheriff's cruiser, Shelli Lambert drove to the house where Keith Lambert was hiding. (Doc. 10, ¶ 50, PageID #: 41). Despite policies of both Defendants' employers requiring them to stay, identify themselves, and immediately report what had happened, Keith Lambert got into the passenger seat of the unmarked Sheriff's cruiser, and Shelli Lambert drove him away from the scene before law enforcement arrived. (Doc. 10, ¶¶ 51, 52, PageID #: 41).

Neither Keith Lambert nor Shelli Lambert reported the incident on July 24, 2019, contrary to their duty as law enforcement officers to report incidents such as this. (Doc. 10, ¶ 54, PageID #: 41). Instead, Shelli Lambert used her position in the Sheriff's Department to review reports of pending investigations to see if Keith Lambert had been reported. (Doc. 10, ¶ 56, PageID #: 41). Only the next day, after Shelli Lambert accessed the Sheriff's investigation records to confirm that there was an open investigation with the Sheriff's Serious Crimes Unit, did Keith Lambert report the incident. (Doc. 10, ¶ 57, PageID #: 42). Meanwhile, Keith Lambert hid at the Defendants' residence, allowing his blood alcohol levels and other evidence of intoxication to dissipate and metabolize. (Doc. 10, ¶ 58, PageID #: 42).

Prior to the discovery of Keith Lambert's identity, the Knox County Sheriff's Office investigated the July 24, 2019 incident as an aggravated assault. (Doc. 10, ¶ 62, PageID #: 42). After it became known that Keith Lambert and Shelli Lambert, both law enforcement officers, were involved, the Knox County District Attorney declined to indict Keith Lambert. (Doc. 10, ¶ 63, PageID #: 42). Though the University of Tennessee Police Department's own internal investigation noted the "potential use of drugs or alcohol," Defendants' conduct allowed any substances in Keith Lambert's system to metabolize, and the Knox County Sheriff's Office took no action to determine whether Keith Lambert had been impaired. (Doc. 10, ¶¶ 59, 60, PageID #: 41). Despite Keith Lambert's egregious conduct which caused the Slowiks pain and suffering, emotional distress, and mental anguish, the University of Tennessee allowed him to retire with all benefits intact and took no other action. (Doc. 10, ¶¶ 64, 102, PageID #: 42, 46).

## STANDARD

On a motion to dismiss for failure to state a claim, a court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana,*

*Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

Stated differently, a motion, such as Defendant's, to dismiss a claim pursuant to FED. R. CIV. P 12(b)(6) for failure to state a claim upon which relief can be granted, "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 4, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69 (1984). Accordingly, a claim or cause of action is <u>not</u> to be dismissed pursuant to Rule 12(b)(6) "unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint." *Equal Justice Found. v. Deutsche Bank Trust Co. Ams.*, 412 F. Supp. 2d 790 (6th Cir. 2005); *see also Galloway v. Big G Express, Inc.*, 2008 U.S. Dist. LEXIS 945 (E. D. Tenn. 2008).

In ruling on a Rule 12(b)(6) motion, a court generally may not consider any facts outside the complaint. *See Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005); *see also Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014) ("[P]laintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim."). As such, the court's inquiry focuses solely on whether the

factual allegations[1] of the complaint lead to an inference of wrongdoing. Despite this basic standard for considering motions presented under FED. R. CIV. P. 12(b)(6), Keith Lambert, throughout his Memorandum of Law in Support of Partial Motion to Dismiss, submits matters outside the First Amended Complaint for this Court's consideration,[2] and the Slowiks respectfully request that this Court ignore the various statements scattered throughout Keith Lambert's memorandum that are predicated on an incorrect or irrelevant standard at this stage in the proceedings.

## ARGUMENT

Keith Lambert's Motion requesting the Court dismiss multiple causes of action against him that arise out of his unconscionable conduct should be denied as the First Amended Complaint undoubtedly states a cause of action as to each count asserted. As set forth herein and addressed in the order raised within Defendant's Memorandum, Plaintiffs' causes of action are properly pleaded and/or are made in good faith on a theory upon which the Tennessee Supreme Court has not yet addressed.

---

[1] Defendant inaccurately claims that the First Amended Complaint is "replete with allegations made based upon Plaintiffs' belief." (Doc. 16, PageID #: 70). The Facts section of the First Amended Complaint employs the word "belief" only once. (*See* Doc. 10, PageID #:2-8). Were this Court to disregard the single allegation that includes "belief," the remaining allegations of fact would nevertheless lead the Court to a plausible inference of Defendant's liability.

[2] *See, e.g.*, "Unbeknownst to Defendants...," (Doc. 16, PageID #: 68); "Mr. Lambert's honest mistake...," (Doc. 16, PageID #: 69); "There is no credible evidence that Mr. Lambert abused his position...," (Doc. 16, PageID #: 77); "Mr. Lambert had no intent to invade the Plaintiffs' privacy...," (Doc. 16, PageID #: 81)).

I.    **The Slowiks claim for spoliation against Keith Lambert (which could also be styled as a claim for intentional interference with prospective litigation by spoliation) is valid, and Defendant's request to dismiss the same should be denied.** [3]

As set forth in the First Amended Complaint, Keith Lambert spoliated evidence relevant to Plaintiffs' claims and destroyed valuable information that likely would have been used against him in future litigation—this litigation.  As a result, he should be held accountable, and Plaintiffs' cause of action based upon the same should be permitted to proceed.  By not reporting the confrontation of July 24, 2019, fleeing the scene, and hiding long enough for any substances in his system to metabolize, Keith Lambert eliminated the possibility of unearthing material evidence in a later civil or criminal proceeding.  Now, Keith Lambert seeks to capitalize on a dearth of controlling law to escape liability for his conduct.  The Slowiks ask this Court not to reward Keith Lambert for the dereliction of his duty to report the incident and for his failure to preserve evidence necessary to secure justice.

While the Tennessee Supreme Court has yet to address the matter, several states recognize evidence spoliation as a cognizable tort, *see, e.g.*, *Hazen v. Anchorage*, 718 P.2d 456, 463-64 (Alaska 1986), and there is reason to believe Tennessee would do so as well.  For instance, in adopting the tort of intentional interference with prospective business relationships, the Tennessee Supreme Court quoted an Illinois appellate decision at length, stating:

> The theory of the tort of interference, it is said, is that the law draws a line beyond which no member of the community may go in intentionally intermeddling with the business affairs of others; that if acts of which complaint is made do not rest on some legitimate interest, or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed; and that the line of demarcation between permissible behavior and interference reflects the ethical standards of the community.

---

[3] *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 550-51 (6th Cir. 2001) (citing *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) ("The Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint.  Indeed, this court has made clear that 'the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.'").

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 700-01 (Tenn. 2002) (quoting *City of Rock Falls v. Chicago Title & Trust Co.*, 300 N.E.2d 331, 333 (Ill. App. Ct. 1973)). Tennessee's highest court acknowledges that there are instances when a defendant may be held liable for intentionally intermeddling with another's probable expectancy, and it is asserted that such rationale should be implemented in the instant case to recognize the tort of intentional interference with prospective litigation. Such was the reasoning of the Supreme Court of Alaska in *Hazen*, which analogized to the tort of intentional interference with prospective business advantage and stated that a prospective civil action is a valuable "probable expectancy" that the courts should protect. *See Hazen*, 718 P.2d at 463-64.

Defendant Keith Lambert relies upon two district court cases for his argument that the spoliation claim should be dismissed: *Poynter v. GMC*, 476 F. Supp. 2d 854 (E.D. Tenn. 2007) and *Benson v. Penske Truck Leasing Corp.*, 2006 WL 840419 (W.D. Tenn. Mar. 30, 2006). Neither is directly applicable to the instant case under the circumstances. In both cases Defendant cites, the courts stated that Tennessee does not recognize an independent cause of action for first-party spoliation because, in cases such as those present and analyzed in the matters before them, "sanctions for the spoliation generally can remedy any harm a plaintiff suffers by a defendant's actions." *Poynter*, 476 F. Supp. 2d at 858 (quoting *Benson*, 2006 WL 840419, at *5. Importantly, however, neither *Poynter* nor *Benson* involved law enforcement officers conspiring to hinder official investigations and conceal material evidence against one of them. Here, the Slowiks' spoliation count contributes to their claim for civil conspiracy between Keith Lambert and Shelli Lambert because it serves as one of the underlying predicate torts necessary for that claim. Defendants have already been allowed to evade justice once by eliminating evidence that would have resulted in an indictment, and without the first-party

spoliation claim against Keith Lambert, Defendant Shelli Lambert stands a chance of being rewarded for her part in obstructing justice. Plaintiffs' potential inability to establish Keith Lambert's intoxication is further limiting and may impair (no pun intended) the Slowiks' ability to pursue greater damages under TENN. CODE. ANN. §§ 29-39-102 and/or 104.

On certified question from the U.S. District Court for the Southern District of Ohio, the Supreme Court of Ohio in *Smith v. Howard Johnson Co.* set forth the elements for tortious interference with or destruction of evidence: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of defendant that litigation exists or is probable; (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and, (5) damages proximately caused by the defendant's acts. 615 N.E.2d 1037, 1038 (Ohio 1993). The facts and allegations set forth in the Slowiks' First Amended Complaint go to each of these identified elements.

As Assistant Chief of Police with the University of Tennessee Police Department, Keith Lambert would have understood that assaulting and verbally accosting a family of four while holding a firearm would likely result in litigation. (*See* Doc. 10, ¶¶ 14, 19, 24-39, PageID #: 38-40). Keith Lambert's request to speak with Coach Slowik privately, as well as his recitation that he was a "cop," suggest he likely wanted to smooth things over with the Slowiks in the hope of avoiding consequences for his behavior. (*See* Doc. 10, ¶¶ 42, 44, PageID #: 40). Keith Lambert then hid, intentionally getting rid of relevant and material evidence regarding his mental state, blood alcohol content, and other evidence of impairment, until he confirmed that an investigation was in fact pending. (*See* Doc. 10, ¶¶ 58, 174, 175, PageID #: 42, 55). Consequently, the Slowiks lost evidence they could have used in their claims against him. (*See* Doc. 10, ¶¶ 175-

177, PageID #: 55).  For the foregoing reasons, the Slowiks have stated a viable cause of action for intentional interference with prospective civil action by first-party spoliation.

## II.  The Slowiks' negligence *per se* claim is cognizable and should not be dismissed.

Defendant's motion to dismiss Plaintiffs' negligence *per se* claim must be denied.  Even if violations of 18 U.S.C. § 242 and Tenn. Code Ann. § 39-16-402 could not be used to support a claim for negligence *per se*, such does not warrant a Rule 12(b)(6) motion given the plain language utilized in Plaintiffs' First Amended Complaint.  As Defendant properly sets forth in his Memorandum, Plaintiffs allege within the negligence *per se* count of their Amended Complaint, that Keith Lambert "violated *one or more* laws and regulations and breached the duty of care that was owed to Plaintiffs." (Doc. 10, ¶ 107, PageID #: 47) (emphasis added).  The following paragraph then asserts that Defendant Keith Lambert was guilty of violating *one or more* of the following statutes of the State of Tennessee and/or the United States, which were in full force and effect at the time of the incident described herein, said violations constituting negligence per se and which were a direct and proximate cause of the injuries and damages incurred: . . ." (*Id.* at ¶ 108) (emphasis added).  Accordingly, if Defendant takes issue with two of the ten statutes cited, his recourse is not a 12(b)(6) Motion seeking the dismissal of a claim, not where Plaintiffs' cause of action claims that "one or more" of the ten cited statutes has been violated and the allegation, on its face, can be proven accurate on the facts asserted.  His Motion should, therefore, be denied.

Plaintiffs further highlight that, under the doctrine of negligence *per se*, a trial court may exercise discretion in using a statute as the applicable standard of care in a negligence action. Defendant Keith Lambert's argument fails to explain why the Court should not adopt the standards of care set forth in the referenced statutes.  *See Cook By and Through Uithoven v.*

*Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (finding that the standard of conduct expected of a reasonable person may be prescribed in a statute, ordinance, or regulation, and consequently a violation of the relevant statute, ordinance, or regulation may be deemed to be negligence *per se*); *see also Rains v. Bend of the River*, 124 S.W.3d 580, 590-91 (Tenn. Ct. App. 2003) (holding that, while the doctrine "is not a magic transformational formula that automatically creates a private negligence cause of action for the violation of every statute," whether to adopt the standard of care set forth in a penal statute or other law is within the trial court's discretion).

Moreover, in order to establish negligence *per se*, it must be shown that the relevant law was designed to impose a duty or prohibit an act for the benefit of a person or the public. *See Nevill v. City of Tullahoma*, 756 S.W.2d 226, 232-233 (Tenn. 1988). The two threshold questions in every negligence *per se* case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent. *See Whaley v. Perkins*, 197 S.W.3d 665, 673 (Tenn. 2006) (citing *Rains*, 124 S.W.3d at 590-91). In the present case, the Slowiks satisfy each for the statutes with which Defendant takes issue.

## A.     18 U.S.C. § 242[4]

18 U.S.C. § 242 is aimed at preventing and punishing the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States under the color of law.  The purpose of 18 U.S.C. § 242 is the protection of an individual in his civil liberties.  *See Screws v. United States*, 325 U.S. 91, 98 (1945) (Douglas, J., plurality opinion) (interpreting predecessor to 18 U.S.C. § 242).  Congress enacted it in order to enforce the Fourteenth Amendment.  *See id.*  Its purpose is to protect all persons in the United States in their civil rights, and furnish the means of their vindication.  *See id.*

The Slowiks are undoubtedly persons entitled to the rights, privileges, and immunities secured by the Constitution and laws of the United States.  Therefore, they are of the class of people the statute was designed to protect.  Furthermore, the Slowiks have alleged that Keith Lambert's conduct under color of law deprived them of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.  (*See* Doc. 10, ¶ 74, PageID #: 43).  Thus, the injuries they sustained are of the type that Congress intended to protect in passing 18 U.S.C. § 242.  Both threshold questions for the applicability of the statute to a negligence *per se* action must be answered in the affirmative.

---

[4] Defendant notes that the First Amended Complaint "is devoid of any allegation that Mrs. Lambert's actions were on account of the Plaintiffs' color, race, or alien status."  (Doc. 18, PageID #: 121).  Defendant's argument is specious:  applicability of 18 U.S.C. § 242 to the willful deprivation of constitutional rights has not turned on a person's color, race, or alien status since 1941.  *See United States v. Classic*, 313 U.S. 299, 326-27 (1941) (noting the qualification with respect to alienage, color, or race refers only to differences in punishment and not to deprivations of any rights or privileges secured by the Constitution or laws of the United States); *see also Miller v. United States*, 404 F.2d 611, 612 (5th Cir. 1968) (concluding that it is a misreading of the statute to believe that 18 U.S.C. § 242 is irrelevant where race, color, and alienage are not involved).

## B. TENN. CODE ANN. § 39-16-402

A public servant who intentionally or knowingly abuses his or her position is guilty of official misconduct as outlined in TENN. CODE ANN. § 39-16-402(a). *See* Sentencing Commission Comments to TENN. CODE ANN. § 39-16-402. Inherent in the offense is breach of the public trust. *See State v. Sowers*, 2016 Tenn. Crim. App. LEXIS 598, at *15 (Tenn. Crim. Ct. App. Aug. 12, 2016). Based on how courts have construed the statute, it appears that its purpose is to protect the public from those who abuse their positions as public servants to acquire a benefit at the public's expense or to directly harm members of the general public. *See, e.g.*, *State v. Butler*, 2016 Tenn. Crim. App. LEXIS 415 (Tenn. Crim. Ct. App. Jun. 6, 2016) (reasonable jury could have found that defendant abused his status as a police officer to induce a fellow officer into arresting two men despite lack of probable cause or reasonable suspicion); *see also State v. Brewer*, 945 S.W.2d 803 (chief of police engaged in unauthorized exercise of power to benefit a relative, thereby involving substantial risk of undermining official impartiality and casting a pall over investigations conducted by his department).

The Slowiks, as residents of Tennessee, are members of the general public whom the General Assembly intended to protect from acts of official misconduct. Additionally, the injuries they allege and which Defendant's acts proximately caused are of the type meant to be prevented by the statute. (*See, e.g.*, Doc. 10, ¶¶ 72-83, PageID #: 43, 44). Without any argument to the contrary, the answers to the threshold questions for applicability of negligence *per se* must be in the affirmative.

## C. Policies and Procedures

Defendant further improperly takes issue with Plaintiffs' factual assertion that Keith Lambert violated policies and procedures of the University of Tennessee Police Department,

conclusions set forth in the University's own report.  What Defendant fails to recognize, however, in filing his motion to dismiss, is that Plaintiffs have not asserted their claim for negligence *per se* on the premise that such policies and procedures were violated. The Slowiks, in accordance with *Haney v. Bradley County Bd. of Educ.*, 160 S.W.3d 886, 892 (Tenn. Ct. App. 2004), acknowledge that an internal policy likely cannot serve as the standard of care for a negligence *per se* claim and submit that it was not their intent to bring a negligence per se claim based upon Keith Lambert's obvious policy violations, and they do not believe they have done so.  Notwithstanding their intent, counsel for the Slowiks also acknowledge the potential confusion that including this factual statement under Count V may create and aver that if defense counsel had properly and sufficiently addressed his argument during the February 28, 2020 meet-and-confer telephonic conference, had not refused to discuss the actual grounds for his anticipated motion to dismiss, and not simply stated in a conclusory manner that Plaintiffs' claim "failed to state a claim for which relief could be granted," the Slowiks could have, and likely would have, cured this confusion by seeking to amend their First Amended Complaint. [5]

### D. TENN. CODE ANN. § 39-12-103

Lastly, Keith Lambert takes issue with Plaintiffs' inclusion of TENN. CODE ANN. § 39-12-103 within the list of statutes Defendant may be found to have violated and which may support a claim for negligence *per se*.  "The offense of conspiracy, aimed at group criminality, is

---

[5] Notwithstanding Defendants' counsel's "Certification of Consultation," ECF Doc# 17, PageID # 115, there has never been discussion between counsel about whether an amendment could address the arguments raised in Defendants' motion to dismiss.  Rather, in the telephone conference on February 28, 2020, counsel for Defendants expressly refused to disclose the specific, anticipated grounds for Defendants' motions, other than "failure to state a claim," such that counsel for Plaintiffs could not consider whether to obviate the need for the motion to dismiss by filing of an amended complaint.  To the extent the Court finds this issue material, Plaintiffs request leave to amend their complaint to cure the defect.

based on the principle that an offense committed by a group poses a greater public threat than offense committed by a single individual." Sentencing Commission Comments to TENN. CODE ANN. § 39-12-103. The Slowiks are members of the general public, which the General Assembly clearly intended to protect by passage of the criminal conspiracy statute. Also, Keith Lambert's conduct as alleged in the First Amended Complaint is egregious and criminal in nature, such that it would constitute a criminal offense under Tennessee law. (*See* Doc. 10, ¶ 61, PageID #: 42). The harm meant to be prevented by the statute was the harm endured by the Slowiks.

Keith Lambert's argument for dismissal of the negligence *per se* claim with respect to Tennessee's criminal conspiracy statute turns on the fact that citation to "TCA 39-12-103" was included as a subsection in Count V against Keith Lambert but mistakenly omitted from Count VI against Shelli Lambert. (*See* Doc. 10, ¶¶ 108(c), 117, PageID #: 12, 14). It is true that a criminal conspiracy requires the involvement of two or more people. *See* TENN. CODE ANN. § 39-12-103(a). However, Keith Lambert's argument requires that the Court focus entirely on whether "TCA 39-12-103" was included as a subsection in Count VI of the First Amended Complaint. Looking to the substance of the complaint, it is evident that the Slowiks have alleged criminal conspiracy against both Keith Lambert and Shelli Lambert. (*See* Doc. 10, ¶¶ 49-61, 91-97, 178-183, PageID #: 41, 42, 10, 11, 20, 21); *see also Helwig*, 251 F.3d at 550-51 (considering the substance of the complaint over pure labeling). It is also again asserted that had defense counsel taken the opportunity to sufficiently raise this issue in the required meet-and-confer telephonic conference and had not refused to discuss the actual grounds for his assertions, the

Slowiks would have asked the Court for leave to amend to specifically allege the obvious: that Shelli Lambert was the other conspirator. [6]

For these reasons and the reasons set forth above, Plaintiffs submit that Keith Lambert's positions and arguments are misplaced, that his chosen method to address certain issues through and 12(b)(6) motion is improper, and request that, as a result, his motion as it relates to the Slowiks' negligence per se claims be denied.

### III. Keith Lambert was acting under color of law when he confronted the Slowiks, and the facts set forth in the Slowiks' First Amended Complaint are sufficient to maintain a claim under 42 U.S.C. § 1983.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right, privilege, or immunity secured by the Constitution or federal law by a person acting under color of law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). A defendant acts under color of law when he abuses the position given to him by the state. *See Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992).

The Slowiks state the following in their First Amended Complaint: that Keith Lambert was Assistant Chief of Police for the University of Tennessee Police Department on the date of the incident; that he was on call when he left work early in an unmarked police cruiser; that he repeatedly identified himself as a "cop" when confronting the Slowiks in their home; that he brandished his service weapon during the confrontation in the Slowiks' garage; and that he gave commands of a type given by police officers. (*See* Doc. 10, ¶¶ 14, 16, 18-44, 72, PageID #: 38-40, 43). Based upon the same, Defendant Keith Lambert was clearly acting under color of law

---

[6] See note 6, *supra.* Plaintiffs anticipate that drawing inferences in their favor will lead the Court to conclude that Plaintiffs have clearly alleged that Shelli Lambert was Keith Lambert's co-conspirator. If the Court concludes that conspiracy was not adequately pled against Shelli lambert, Plaintiffs request leave to amend their complaint to make that explicit.

when he assaulted the Slowiks and falsely imprisoned them in their home. If such is not clear as Plaintiffs claim, it can, at the very least, be plausibly inferred therefrom, and Defendant's Motion to Dismiss should be denied.

In his Memorandum of Law in Support of Partial Motion to Dismiss, Keith Lambert argues "[t]here is no credible evidence that Mr. Lambert abused his position as a police officer during the July 24, 2019, incident." (*See* Doc. 16, PageID #: 77). Defendant proceeds to offer a competing narrative, claiming the following: "Mr. Lambert was traveling to his new home and mistakenly entered the wrong driveway. Upon realizing his mistake, Mr. Lambert apologized to the Plaintiffs multiple times and left." *Id.*

Defendant's argument, however, presumes that a wholly different standard applies at this stage of the proceedings. The test applied in analyzing a Rule 12(b)(6) motion is not whether there is "credible evidence" or whether there exists only one available inference from the allegations. The test is whether the Slowiks pleaded enough factual content to lead the court to a plausible inference of Defendant's wrongdoing, and at this stage, the Court construes the complaint in the light most favorable to the Slowiks, accepting all factual allegations as true. *See Keys*, 684 F.3d at 608. Furthermore, even if Defendant Keith Lambert's proffered rationale appears stronger, which is unequivocally denied, it would be improper for the Court to judge the relative strength of competing inferences upon a Rule 12(b)(6) motion. *See Bright v. Gallia County*, 753 F.3d 639, 654 (6th Cir. 2014) (concluding that district court erred by dismissing the § 1983 plaintiff's claim on the basis that the defendant's explanation appeared stronger than the inference argued by plaintiff). Therefore, the Slowiks' § 1983 claim should not be dismissed and Defendant's Motion requesting that it be eliminated from the causes of action asserted should be denied.

**IV.** **The Slowiks have sufficiently pleaded a conspiracy claim under 42 U.S.C. § 1983 that must survive a 12(b)(6) motion to dismiss as they assert that Keith Lambert conspired with his wife, Shelli Lambert, and that the two Defendants had a single plan to spoliate evidence and hide in order to deprive the Slowiks of their constitutional rights.**

Whereas Keith Lambert's argument for dismissal of the Slowiks' § 1983 claim depends on an irrelevant standard, his argument for dismissal of the § 1983 conspiracy claim hinges on the Court applying an inordinately high and improper pleading standard to the First Amended Complaint. Such should not happen, and Defendant's motion to dismiss the same should be denied. To be sure, conspiracy claims must be pled with some degree of specificity. However, a plaintiff need not spell out in excruciating detail how defendants conspired against the plaintiff. *See Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902, 86 Fed. Appx. 137 (6th Cir. 2004); *see also Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir. 1988) (stating that § 1983 plaintiff need not set down in detail all the particularities of her claim against a defendant). The crux of the issue is whether the Slowiks have given Defendants Keith Lambert and Shelli Lambert fair notice of what the claim is and the grounds upon which it rests. *See Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555). They have.

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *See Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Express agreement among all the conspirators is unnecessary to find the existence of a civil conspiracy. *See id.* Each conspirator need not have known all the details of the illegal plan or all the participants involved. *See id.* Instead, to establish a civil conspiracy claim, a plaintiff must show that (1) a "single plan" existed; (2) defendants "shared in the general conspiratorial objective" to deprive plaintiff of his constitutional or federal statutory rights; and (3) an "overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiffs. *Id.*; *see also Trans Rail Am.,*

*Inc. v. Hubbard Twp.*, 478 F. App'x. 986, 988 (6th Cir. 2011). A Plaintiff does not have to allege or produce direct evidence of the conspiracy, and "circumstantial evidence may provide adequate proof." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *see also Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011).

To illustrate the sufficiency of a § 1983 conspiracy claim, consider *Patton v. Louisville Jefferson Cty. Metro Gov't*, 2019 U.S. Dist. LEXIS 178200, 2019 WL 5196384 (W.D. Ky. Oct. 15, 2019). In *Patton*, the plaintiff was awaiting trial when the defendants allegedly placed him in holding with individuals who had previously threatened him. *See id.* at *2. He was supposed to be in protective custody or in seclusion. *See id.* The individuals who threatened him made good on their threat, assaulting him in the shower and causing him to suffer a fractured skull, fractured eye socket, broken arm, and other bodily injuries. *See id.* at *3. Despite the known health and safety risk to the plaintiff, the defendants were not checking on him during their rounds. *See id.* The plaintiff was left to lay in the shower room seriously injured and nearly dead for five hours before defendants discovered him, only after the plaintiff's mother visited and inquired into his whereabouts. *See id.* Based on these allegations, the plaintiff in *Patton* alleged that the defendants conspired to violate his Fourteenth Amendment rights. *See id.* at *9. The district court held these allegations sufficient for a § 1983 conspiracy claim because, taking the allegations as true, they constituted adequate circumstances to lead to a plausible inference of conspiracy. *See id.* at *10.

Similarly, the allegations in the First Amended Complaint sufficiently plead a § 1983 conspiracy claim because the facts indicate a single plan to remove Keith Lambert from the scene and prevent the discovery of damning evidence against him. Keith Lambert's outrageous conduct violated the Slowiks' Fourth, Fifth, and Fourteenth Amendment rights. (Doc. 10, ¶ 74,

PageID #: 43). In deliberate indifference to the Slowiks' rights, and as law enforcement officers with a duty to report incidents such as the one on July 24, 2019, Keith Lambert and Shelli Lambert acted in concert to ensure that Keith Lambert was unavailable for questioning by investigating officers, timely examination of his blood alcohol content, and other investigation. (*See* Doc. 10, ¶¶ 91-97, PageID #: 45, 46).

It is unnecessary, despite Defendant's argument to the contrary, for the Slowiks to go above and beyond to establish a single plan to deprive them of their constitutional rights. All that is necessary is enough factual predicate to support a plausible inference of Keith Lambert and Shelli Lambert's wrongdoing, which the Slowiks provided in the First Amended Complaint. Therefore, dismissal is not warranted, and Defendant's Motion should be denied.

**V.     The Slowiks' claim for civil conspiracy rests upon violations of 42 U.S.C. § 1983, intentional interference with prospective civil action by spoliation, and negligence *per se*, and therefore Keith Lambert's contention that there is no underlying predicate tort is without merit.**

Like his other arguments, Keith Lambert's rationale for dismissal of the civil conspiracy claim rests upon a technicality and the relative strength of a competing narrative. His two-part assertion—that the Slowiks do not identify an actionable tort that is the basis of the conspiracy and that his version of events better explains the circumstances of July 24, 2019 and the days thereafter—falls flat, however, when considering the relevant standard and law.

The elements for a civil conspiracy claim in Tennessee are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *See Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Additionally, civil conspiracy requires an underlying predicate tort allegedly committed pursuant

to the conspiracy. *See Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006).

Here, Defendant claims that the Slowiks failed to identify an actionable predicate tort due to "nonspecific allegations that the Defendants 'had a common design' to hide Mr. Lambert, spoliate evidence, and 'deprive the Plaintiffs and law enforcement of information concerning his identity and his physical and mental condition.'" (Doc. 16, PageID #: 78) (quoting Doc. 10, ¶¶ 179, 180, PageID #: 55, 56). Essentially, Defendant makes much ado about the lack of clear labeling of the torts that form the basis of the civil conspiracy claim. As has been established, the Court is to look beyond labels and consider the substance of the First Amended Complaint. *See Helwig*, 251 F.3d at 550-51. In the several pages leading up to Count XIV—Civil Conspiracy, the First Amended Complaint sets forth the factual predicate and substance of the claims against the Defendants, including the claims for intentional interference with prospective civil action by spoliation, negligence *per se*, and violations of 42 U.S.C. § 1983. (*See* Doc. 10, PageID #: 43-55). The so-called failure to identify an actionable tort in clear, obvious terms under the heading of Count XIV—Civil Conspiracy is not fatal to the Slowiks' claim for civil conspiracy.

Defendant apparently believes his account of what occurred should supersede the Slowiks' allegations. (*See* Doc. 16, PageID #: 78, 79). He insists that the Court consider matters outside the First Amended Complaint. *See id.* ("The Defendants were not aware. . . ."). As set forth above, however, matters outside the pleadings are not to be considered on a motion to dismiss for failure to state a claim. *See Passa*, 123 Fed. Appx. at 697. Even if those matters could be considered, the existence of a stronger inference does not justify dismissal of a claim if the allegations raise a plausible inference of the defendant's wrongdoing. *See Bright*, 753 F.3d at

654. In light of these considerations, and because the facts alleged in the complaint raise the inference that Defendants conspired against the Slowiks, the claim for civil conspiracy should not be dismissed.

## VI. Because the Slowiks have sufficiently pleaded the intent necessary for their invasion of privacy claim and Keith Lambert's argument rests upon matters outside the Complaint, Defendant's Motion to Dismiss should be denied.

Keith Lambert's request to dismiss the invasion of privacy claim against him should be denied. In essence, Defendant's argument for dismissal of the invasion of privacy claim is an assertion that his egregious and reprehensible conduct was simply the result of an "honest mistake." Despite quoting the unambiguous language of the First Amended Complaint that he "intentionally intruded upon the Plaintiffs' solitude or seclusion or the private affairs or concerns of the Plaintiffs," Keith Lambert asserts that the Slowiks failed to establish that he acted intentionally. (*See* Doc. 16, PageID #: 80). This argument flies in the face of what is required under the Federal Rules of Civil Procedure and the applicable standard to sustain a 12(b)(6) motion at this stage of the litigation.

Invasion of privacy is an intentional tort. *See generally*, *Beard v. Akzona, Inc.*, 517 F. Supp. 128, 131 (E.D. Tenn. 1981); *see also Martin v. Senators, Inc.*, 418 S.W.2d 660, 663 (Tenn. 1967). Intent may be alleged generally. *See* FED. R. CIV. P. 9(b). Thus, the Slowiks allege that Keith Lambert "intentionally intruded" upon their solitude, seclusion, or private affairs. (Doc. 10, ¶ 142, PageID #: 51). Despite the use of this plain language in their filing, Defendant avers that the First Amended Complaint "is completely devoid of any facts to support their allegation that [he] 'intentionally intruded upon the Plaintiffs' solitude or seclusion. . . .'" (*See* Doc. 16, PageID #: 81) (quoting Doc. 10, ¶ 142, PageID #: 51). Defendant Keith Lambert then restates his version of the facts, saying he "simply made an honest mistake." (*See* Doc. 16, PageID #:

81).  Once more, Defendant's argument implicitly asks this Court to (1) consider matters outside

the First Amended Complaint and to (2) accept Defendant's narrative as opposed to construing

the allegations in the light most favorable to the Slowiks.  Neither is permissible.  *See Passa*, 123

Fed. Appx. at 697; *see also Bright*, 753 F.3d at 654.  As a result, and because the Slowiks

sufficiently pleaded the requisite mental state for their claim of invasion of privacy, Keith

Lambert's motion to dismiss Plaintiffs' invasion of privacy claim should be denied.

## VII.   Keith Lambert's request for costs and attorney's fees pursuant to TENN. CODE ANN. § 20-12-119(c) should be denied as the plain language of the statute and the *Erie* doctrine preclude its applicability to a federal case.

Even if this Court were to dismiss any of the claims made in the First Amended

Complaint, Defendant's request for costs and attorney's fees under TENN. CODE ANN. § 20-12-

119(c) should be denied as specious.  To state the obvious, this action is currently pending in a

United States District Court, governed by the Federal Rules of Civil Procedure.

The pertinent provision of the fee-shifting statute at issue states the following:

> "[W]here a trial court grants a motion to dismiss pursuant to Rule 12 of the **Tennessee Rules of Civil Procedure** for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party or parties whose claim or claims were dismissed as a result of the granted motion to dismiss."

TENN. CODE ANN. § 20-12-119(c) (emphasis added).  Title 20 of the Tennessee Code is entitled

"Civil Procedure," and contains sections regarding process, venue, and pleadings.  TENN. CODE

ANN. § 20-12-119(c) is procedural for purposes of *Erie* doctrine and consequently does not apply

to a federal action.  *See J-Line Pump Co. v. Chand*, 2014 U.S. Dist. LEXIS 194880, at *3 (W.D.

Tenn. Sept. 19, 2014).  Even if the statute were substantive, the plain language limits its

applicability to instances when a court grants a motion to dismiss pursuant to the Tennessee

Rules of Civil Procedure. *Id.* at *3-4. Defendant Keith Lambert has filed a FED. R. CIV. P. 12(b)(6) motion in federal court. Thus, TENN. CODE ANN. § 20-12-119(c) does not apply to this matter, and the Court should deny his request for attorney's fees and costs thereunder.

## CONCLUSION

Based on the foregoing, the Slowiks respectfully request that the Court DENY Defendant Keith Lambert's Partial Motion to Dismiss as well as his request for attorney's fees and costs pursuant to TENN. CODE ANN. § 20-12-119(c).

Respectfully submitted,

/s/ Gregory Brown
Gregory Brown, BPR# 027944
Christopher Field, BPR# 028070
W. Scott Hickerson, BPR# 026369
LOWE YEAGER & BROWN PLLC
900 S. Gay Street, Suite 2102
Knoxville, TN 37902
Phone: (865) 521-6527
Fax: (865) 637-0540
gb@lyblaw.net
ccf@lyblaw.net
wsh@lyblaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Gregory Brown
Gregory Brown