UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| RYAN SLOWIK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 3:19-CV-00501-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| KEITH LAMBERT and SHELLI LAMBERT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' separately filed partial motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docs. 15, 17]. Plaintiffs filed responses in opposition [Docs. 21, 22], Defendants replied [Docs. 23, 24] and Plaintiffs filed sur replies [Docs. 32, 33]. The motions are now ripe for resolution.

**I.     BACKGROUND**

On Wednesday, July 24, 2019 at approximately 5:45 p.m., Defendant Keith Lambert ("Defendant" or "Mr. Lambert"), Assistant Chief of Police with the University of Tennessee Police Department ("UTPD"), while on call, drove his unmarked police vehicle into the driveway of the Slowiks' ("Plaintiffs") home and parked, blocking Plaintiffs' vehicles [Doc. 10, ¶¶ 14, 16, 18]. He left his vehicle and entered Plaintiffs' attached garage [Doc. 10, ¶ 19]. As Mr. Lambert stood in Plaintiffs' garage, Mrs. Slowik and her daughter exited the door from their home into the garage, unaware that Mr. Lambert was there [Doc. 10, ¶ 20]. Mrs. Slowik described Mr. Lambert as "disheveled and with gun in hand." [Doc. 10, ¶ 24]. According to the Amended Complaint, Mr. Lambert yelled at Mrs. Slowik and her daughter, using expletives, and repeatedly screamed that

he was a "cop" and ordered them out of his house [Doc. 10, ¶ 26]. Mrs. Slowik and her daughter believed that Keith Lambert "was going to kill them." [Doc. 10, ¶ 27]. Mr. Slowik entered the garage from the house as Mr. Lambert continued to "threaten the family with his gun." [Doc. 10, ¶ 31]. Mr. Lambert repeated that he was an officer and that this was his house [Doc. 10, ¶ 33]. Mr. Slowik informed Mr. Lambert that it was the Slowiks' house and that they lived there [Doc. 10, ¶ 37]. The Amended Complaint alleges that when Mr. Slowik "stepped in front of his wife and daughter, to shield them from [Mr.] Lambert's gun," Mr. Lambert moved "toward [Mr.] Slowik with his gun in a more aggressive posture." [Doc. 10, ¶ 39]. At this point, the Slowiks' daughter "began screaming and collapsed to the floor…." [Doc. 10, ¶ 40].

When the Slowiks' daughter collapsed, Mr. Lambert appeared to realize where he was and asked Mr. Slowik to "step outside." [Doc. 10, ¶¶ 41, 42]. Mr. Slowik refused and told Mr. Lambert to leave [Doc. 10, ¶¶ 42, 43]. Mr. Lambert "returned to his unmarked UT police cruiser with his gun in his hand, [and] again stated that he was a 'cop.'" [Doc. 10, ¶ 44]. Mr. Lambert pulled out of Plaintiffs' driveway, drove to the house next door, and went inside [Doc. 10, ¶ 47]. The Slowiks called 911 and met Sheriff's deputies at a nearby location to report the incident [Doc. 10, ¶¶ 48, 49].

Plaintiffs allege that while they were waiting elsewhere to make their report, Mr. Lambert called his wife, Mrs. Shelli Lambert ("Defendant" or "Mrs. Lambert"), who is a "Captain in the records office of the Sheriff's department." [Doc. 10, ¶ 49]. They allege she drove in "an unmarked Sheriff's cruiser," picked up Mr. Lambert, and "drove … away from the scene before law enforcement arrived." [Doc. 10, ¶ 52]. Neither Mr. nor Mrs. Lambert reported the incident to authorities on July 24, 2019 [Doc. 10, ¶ 54].

Plaintiffs allege that the following morning Mr. Lambert stayed at home while Mrs. Lambert went to work at the Sheriff's Department [Doc. 10, ¶ 55]. Plaintiffs allege that Mrs.

2

Lambert used her position in the Sheriff's records department "to see if [Mr.] Lambert had been reported." [Doc. 10, ¶ 56]. Plaintiffs allege that Mr. Lambert reported the incident only after Mrs. Lambert confirmed from police records that "there was an open investigation [of him] with the [Serious Crimes Unit]." [Doc. 10, ¶ 57].

During their investigation of the incident, the Knox County Sheriff's Department took no action to obtain a toxicology report to determine if Mr. Lambert had been using drugs [Doc. 10, ¶¶ 60, 62]. The District Attorney declined to indict him on any criminal charges [Doc. 10, ¶ 63]. Plaintiffs then filed this lawsuit in federal court.

Defendants filed separate partial motions to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) [Docs. 15, 17]. In his partial motion to dismiss [Doc. 15], Keith Lambert challenges and moves to dismiss the following claims: violation and conspiracy to violate 42 U.S.C. § 1983 (Counts I and III), four of the alleged negligence *per se* claims (Count V), invasion of privacy (Count IX), spoliation (Count XIII), and civil conspiracy (Count XIV). In her separate partial motion to dismiss [Doc. 17], Shelli Lambert challenges all claims against her: violation and conspiracy to violate 42 U.S.C. § 1983 (Counts II and III), negligence *per se* (Count VI), negligent infliction of emotional distress (Count X), spoliation (Count XIII), and civil conspiracy (Count XIV).

## II.   STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, a court need not "accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

3

544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Iqbal*, 556 U.S. at 678-79.

The "plausibility standard . . . occupies the wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id*. Alleged facts create a plausible claim when they give rise to a "reasonably founded hope that the discovery process will reveal relevant evidence to support their claims." *Lindsay v. Yates*, 498 F.3d 440, n. 6 (6th Cir. 2007) (citation omitted).

### III. ANALYSIS

**A. Defendants' motion to strike allegations made "upon information and belief."**

Defendants begin by alleging that the Amended Complaint is "replete with allegations made based upon Plaintiff's belief. These allegations are insufficient and may be disregarded by the Court." [Doc. 16, pg. 3; Doc. 18, pg. 3]. It is not uncommon for pleadings to contain allegations based "upon information and belief." They are proper where a plaintiff "lack[s] personal knowledge of a fact," but has "sufficient data to justify interposing an allegation on the subject." *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447-48 (6th Cir. 2014). For example, it is proper where the matter is "exclusively within knowledge and control of the opposing party," *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 512 (6th Cir. 2007) (citation omitted) but is not "if the matter is within the personal knowledge of the pleader." *Starkey*, 573 F. App'x at 447-48; *Amondson v. Merryfield*, 2019 WL 7563529, at *5 (E.D. Tenn. May 22, 2019). The Court has reviewed the factual allegations in the Amended Complaint. There

4

are very few allegations made "upon information and belief" and those concern matters that lie exclusively within the knowledge of Defendants and are based on logical inferences given the factual circumstances. The Court declines to disregard Plaintiffs' factual allegations.

**B.      Mr. Keith Lambert's motion to dismiss Plaintiffs' Section 1983 claim.**

Mr. Lambert moves the Court to dismiss Plaintiffs' Section 1983 claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right, privilege, or immunity secured by the Constitution or law of the United States by a person acting under color of law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978). "[A] defendant in a § 1983 suit . . . acts under color of state law while acting in his official capacity or while exercising his responsibility pursuant to state law." *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992) (quoting *West v. Atkins*, 487 U.S. 42, 49-50 (1988)).

Plaintiffs have alleged several constitutional claims against Mr. Lambert in their Section 1983 count. They claim that Mr. Lambert denied them their right to access the courts, violated their rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution, was deliberately indifferent to their rights, used excessive force, and was grossly negligent.

In his motion, Mr. Lambert claims he was not acting under color of law when the incident occurred but had "mistakenly entered the wrong driveway."[1] [Doc. 16, pg. 10]. He claims, "there is no credible evidence" that he abused his position as a police officer and points out that all

---

[1]     "The Supreme Court has not directly addressed whether the activities of an off-duty police officer may be treated as state action under the Fourteenth Amendment." Section 1983 Litigation, § 2:19, Color of law and state action – Off-duty police officers. "Section 1983 liability may attach when off-duty police officers invoke the real or apparent power of the police departments, and state and federal courts, based on fact-specific inquiries, have found actions by off-duty police officers to be state action and the basis for claims under § 1983." *Id*. "The fact that a police officer is on or off duty, or in or out of uniform is not controlling." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). Rather, it is the nature of the acts performed that determines whether the off-duty officer has acted under color of law. *Id*.

5

criminal charges were "fully investigated by the District Attorney's office" and dropped [Doc. 16, pg. 10].

While that may be true, that does not address whether Plaintiffs have stated a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Because a Rule 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of the witness." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The court should deny a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Gazette*, 41 F.3d at 1064.

While there may be issues with Plaintiffs right to access the courts claim, Mr. Lambert focuses on the credibility of the allegations. That is not a proper basis on which to dismiss a complaint so long as the complaint alleges a plausible cause of action. Plaintiffs have alleged Mr. Lambert, while acting under color of law, wrongfully entered their property, waved his firearm at them, seized them against their will, demanded they explain why they were there (on their property), and left when he realized he was at the wrong house [Doc. 10, ¶¶ 73, 74, 76, 77]. While he disputes these allegations, describing them as "blatantly false," [Doc. 16, pg. 10], at this stage, the Court is not able to judge the credibility of the allegations. Accordingly, Defendants' motion to dismiss Count I of Plaintiffs' Amended Complaint is **DENIED**.

C.  **Mrs. Shelli Lambert's motion to dismiss Plaintiffs' Section 1983 claim.**

Mrs. Lambert has also moved this Court to dismiss Plaintiffs' Section 1983 claim against her [Doc. 18, pg. 8]. Plaintiffs claim that Shelli Lambert acted under color of law when she "removed Keith Lambert from the scene of the confrontation in an unmarked police cruiser and

6

used her position to acquire and monitor information regarding the pending investigation." [Doc. 21, pg. 16 (citing Doc. 10, ¶¶ 49-58, 85-87)]. Plaintiffs claim that by using Sheriff's resources to hide Mr. Lambert and monitor the investigation against him, Mrs. Lambert deprived Plaintiffs of their right to "access the courts and to due process of law," and "to adequate judicial access to seek redress." [Doc. 10, ¶¶ 86, 87].

Mrs. Lambert moves to dismiss Plaintiff's section 1983 claim because "there is no credible evidence that [she] used her position to 'acquire' or 'monitor' any information regarding the pending investigation against Mr. Lambert." [Doc. 18, pg. 9]. She claims that those allegations are "blatantly false…." [*Id.*]. Again, the Court's focus is not on the credibility of the allegations when addressing a Rule 12(b)(6) motion. Rather, it is on whether the allegations state a claim. Mrs. Lambert's attack goes to the credibility of the allegations and not whether they state a claim. For that reason, Mrs. Lambert's motion to dismiss the Count II section 1983 claim against her is **DENIED**.

**D.      Defendants' motion to dismiss Plaintiffs' conspiracy claims.**

Plaintiffs have filed two conspiracy claims, one under section 1983 and one as a general civil conspiracy claim. Defendants have moved the Court to dismiss both. Civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (internal citations and quotation marks omitted). "In order to survive dismissal, Plaintiffs needed to allege facts that, when accepted as true, would allow a juror to find that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020)

7

Plaintiffs allege the underlying claim is that Mr. and Mrs. Lambert entered into a conspiracy to "make … Keith Lambert unavailable for questioning or inspection" and that this obstruction "impeded Plaintiffs' meaningful, effective and adequate judicial access to seek redress for the incident at issue…." [Doc. 10, ¶ 95]. They allege these actions rendered it "impossible for any drug or alcohol test to be performed on Defendant Keith Lambert." [Doc. 10, ¶ 96]. Defendants claim that the "fatal flaw is that it does not tie any factual allegations to the alleged constitutional violations, and it does not identify how Defendant's actions resulted in the deprivation of the constitutional rights." [Doc. 18, pg. 11].

The underlying claim alleged is that Defendants' actions deprived Plaintiffs of an adequate judicial remedy. Plaintiffs allege that the concerted actions of hiding Keith Lambert from investigators violated their constitutional rights to access the courts. Thus, contrary to Defendants' argument, Plaintiffs have identified a constitutional violation.

The reason Defendants argue the court should dismiss this claim is based on factual disputes. For example, they claim they "were not aware that the Plaintiffs had contacted law enforcement on July 24, 2019, or that there was an ongoing investigation." [Doc. 18, pg. 10]. Defendants argue they could not deprive Plaintiffs of any rights if they did not know there was an investigation. But again, for the Court to accept that, it would have to make credibility judgments, which it cannot do at this stage in the pleadings. While there are several problems with Plaintiffs' conspiracy claims as a matter of law, the Court declines to dismiss them based on factual disputes. Therefore, Defendants' motions to dismiss the Count III 42 U.S.C. § 1983 conspiracy claim and the Count XIV civil conspiracy claim are **DENIED**.

E. **Defendants' motion to dismiss portions of Plaintiffs' negligence *per se* claims.**

Defendants argue certain portions of Plaintiffs' negligence *per se* claims should be dismissed as the basis supporting the claim does not establish a duty. Under Tennessee law, to

8

prevail on a negligence *per se* claim, a plaintiff must plausibly allege:

> First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. Second, the injured party must be within the class of persons intended to benefit from or be protected by the statute. Finally, the injured party must show that the negligence was the proximate cause of the injury.

*Shaw v. Metro. Gov't of Nashville & Davidson Cty.*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019) (quotations and citations omitted). The two threshold questions in every negligence *per se* claim are "whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent." *Rains v. Bend of the River,* 124 S.W.3d 580, 591 (Tenn. Ct. App. 2003) (internal citations omitted).

Defendants both challenge Plaintiffs' use of 18 U.S.C. § 242 in support of their negligence *per se* claim [Doc. 16, pg. 5-6]. This statute prohibits depriving anyone of their constitutional rights "on account of such person being an alien or by reason of his color or race…." 18 U.S.C. § 242. Defendants argue the Amended Complaint makes no allegation that Defendants deprived Plaintiffs of any rights on those grounds [Doc. 16, pg. 6, Doc. 18, pg. 6]. Because 18 U.S.C. § 242 is focused on alienage, color, or race, and because Plaintiffs make no allegation that any of those grounds played a role in Defendants' conduct, Plaintiffs have not met the threshold requirement for stating a negligence *per se* claim under 18 U.S.C. § 242.[2] Those claims [Doc. 10, pg. 12, ¶ 108(a) and pg. 14, ¶ 117(a)] are dismissed as to both Defendants.

---

[2] Even if Plaintiffs had alleged a cognizable motivation for Mr. Lambert's actions under 18 U.S.C. § 242, Defendant correctly notes that no private cause of action exists under the statute. *See Young v. Overly*, No. 17-6242, 2018 WL 5311408, at *2 (6th Cir. July 2, 2018) (affirming dismissal of plaintiff's 18 U.S.C. 242 claim because "criminal statutes generally do not create private causes of action."); *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (affirming the dismissal of claims brought under 18 U.S.C. §§ 241 and 242 "because [plaintiff] has no private right of action under either of these criminal statutes"); *Moore v. Potter,* 47 F. App'x 318, 320 (6th Cir. 2002) (affirming district court's dismissal because plaintiff had "no private right of action pursuant to 18 U.S.C. § 242, a criminal statute.").

Defendants next challenge Plaintiffs' use of Tenn. Code Ann. § 39-16-402, a statute that criminalizes official misconduct, as a basis for Plaintiffs' negligence *per se* claim. The statute criminalizes behavior of public servants who, "with intent … to harm another, intentionally or knowingly … [c]ommit[] an act relating to the public servant's … employment that constitutes an unauthorized exercise of official power." Tenn. Code Ann. § 39-16-402(a)(1). Here, Defendants argue, like the use of 18 U.S.C. § 242, this state statute fails to give rise to a private cause of action because it is "housed under the criminal offenses portion of the [T.C.A.]." [Doc. 16, pg. 7]. Plaintiffs argue the statute was designed to "protect the public from those who abuse their positions as public servants." [Doc. 21, pg. 12; Doc. 22, pg. 13]. Plaintiffs allege that both Defendants violated § 39-16-402 by their actions [Doc. 21, pg. 12-13, Doc. 22, pg. 10].

The official misconduct statute, a criminal statute, does not provide a private right of action and does not establish a standard of care for purposes of a negligence *per se* claim. *See*, *e.g.*, *Faulkner v. Mattina*, No. 3:11–CV–250–KKC, 2014 WL 201463, at *8 (E.D.Tenn. Jan. 17, 2014) ("official misconduct" under Tennessee law is a criminal charge, which may only "be brought by indictment, presentment, or criminal information."); *see Davis v. Earls*, 2001 WL 589138, *3 (Tenn.Ct.App. May 30, 2001) (Tenn. Code Ann. § 39–16–402 "do[es] not create a private right of action."). Accordingly, Plaintiffs' negligence *per se* claims in violation of Tenn. Code Ann. § 39-16-402 against both Defendants are dismissed.

Plaintiffs also allege that Mr. Lambert was negligent *per se* when he engaged in a criminal conspiracy in violation of Tenn. Code Ann. § 39-12-103 [Doc. 10, ¶ 108(c)]. Mr. Lambert moves to dismiss, stating that the statute requires "two or more people" to commit the offense, and Plaintiffs have failed to allege this claim against anyone besides Keith Lambert. Tenn. Code Ann. § 39-12-103(a) [Doc. 16, pg. 5]. "The burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute." *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850,

855 (Tenn. 2010). Plaintiffs have not demonstrated this statute could be used to establish a negligence *per se* claim.[3] It is a criminal statute and does not provide a private right of action. Accordingly, Plaintiffs' claim of negligence *per se* against Keith Lambert in violation of Tenn. Code Ann. § 39-12-103 is dismissed.

Mr. Lambert also challenges Plaintiffs' use of the "policies and procedures of the University of Tennessee Police Department" to establish negligence *per se* [*See* Doc. 10, ¶ 109]. Plaintiffs "acknowledge that an internal policy likely cannot serve as the standard of care for a negligence *per se* claim" and submit that it was "not their intent" to bring such a claim based on Defendant Keith Lambert's policy violations [Doc. 22, pg. 14]. Accordingly, this negligence *per se* claim is dismissed.

F.  **Mr. Keith Lambert's motion to dismiss the invasion of privacy claim.**

Mr. Lambert moves the Court to dismiss Plaintiffs' invasion of privacy claim [Doc. 16, pg. 2]. Plaintiffs claim that Mr. Lambert invaded their privacy while "in or on their property." [Doc. 10, ¶ 141]. They allege that he "intentionally intruded upon [their] solitude or seclusion or [their] private affairs or concerns," [Doc. 10, ¶ 142], that this intrusion was "highly offensive," [Doc. 10, ¶ 143] and that they suffered injuries as a result [Doc. 10, ¶ 145]. Defendant claims he cannot be liable for intrusion onto Plaintiffs property because he only "accidentally drove onto the wrong driveway and saw cars in the garage." [Doc. 16, pg. 14]. But, again, this is a factual challenge to the complaint. At this stage, granting a Rule 12(b)(6) motion based on factual disputes is not

---

[3] The Court also notes that Plaintiff cannot identify a standard of care this statute establishes. "When alleging a statute or regulation based on a negligence *per se* claim, it is not sufficient for a plaintiff to assume ... that the alleged violation of a statute automatically supports a claim of negligence *per se.* Even if the plaintiffs are within the class to be protected by the statute, a statutory negligence *per se* claim cannot stand unless the statute establishes a standard of care." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 460 (Tenn.Ct.App. 2000), *app. denied* (Nov. 6, 2000 & Jul. 9, 2001).

warranted. For this reason, Defendant's motion to dismiss the invasion of privacy claim is **DENIED**.

G.  **Mrs. Lambert's motion to dismiss Plaintiffs' negligent infliction of emotional distress claim.**

Mrs. Lambert asks the Court to dismiss Plaintiffs' negligent infliction of emotional distress claim ("NIED") [Doc. 18, pg. 12]. To survive a motion to dismiss, an NIED claim must allege the elements of general negligence plus the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence. *Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004). "A serious or severe emotional injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Ramsey v. Beavers*, 931 S.W.2d 527, 532 (Tenn. 1996). NIED does not allow recovery "for fright or fear alone." *Id*.

Plaintiffs claim that Mrs. Lambert's negligence in hiding Mr. Lambert from law enforcement investigation caused them "serious mental injury," and "significant impairment to their daily life." [Doc. 10, ¶¶ 158, 159]. They allege that they "feared the man who assaulted them could easily return . . . to threaten or harm them," [Doc. 10, ¶ 156] and that they experienced "reasonable, foreseeable, and severe mental anguish over the fact the investigating officers could not locate [Keith Lambert]." [Doc. 10, ¶ 157].

Tennessee courts have held that when "all of the material allegations involve the intentional, deliberate acts of the defendants," a claim for negligent infliction of emotional distress does not exist. *Tidman v. Salvation Army*, 1998 WL 391765, at *3 (Tenn.Ct.App. July 15, 1998). All the allegations against Mrs. Lambert deal with intentional acts on her part. She allegedly intentionally went to her home, picked up Keith Lambert, and removed him from the scene to prevent law enforcement from investigating his actions. Those allegations do not support any

12

negligent conduct on her part. For these reasons, Mrs. Lambert's motion to dismiss the Count X negligence infliction of emotional distress claim is **GRANTED** and the claim is dismissed.

H.      **Defendants' motion to dismiss Plaintiffs' spoliation claim.**

Defendants move to dismiss Plaintiffs' spoliation claim, arguing that spoliation is not a recognized cause of action in Tennessee [Doc. 16, pg. 3]. Plaintiffs claim that Defendants spoliated evidence when Mrs. Lambert removed Mr. Lambert from the scene of the incident, depriving law enforcement of "relevant and material evidence regarding the actions and torts of [Defendant, such as his] mental state, blood alcohol content, and other evidence of impairment," that could have been used against him [Doc. 10, ¶¶ 174-75]. Plaintiffs state that Mr. Lambert's "blood alcohol levels and other evidence of intoxication were dissipated, metabolized, and spoliated." [Doc. 10, ¶ 58].

Tennessee has not recognized a separate cause of action for spoliation of evidence. *Benson v. Penske Truck Leasing Corp.*, 2006 WL 840419, at *4-5 (W.D. Tenn. Mar. 30, 2006) (concluding that Tennessee would follow the majority of states that reject spoliation as an independent tort action). This Court has held that "Tennessee does not recognize a cause of action for first party spoliation of evidence because . . . sanctions [for] spoliation generally can remedy any harm a plaintiff suffers by a defendant's actions." *Poynter v. Gen. Motors Corp.*, 476 F. Supp. 2d 854, 857 (E.D. Tenn. 2007); *see also Whitaker v. Prudential Ins. Co. of Am.*, 2008 WL 11319729, at *2 (W.D. Tenn. Mar. 13, 2008) (holding that though Tennessee courts "have not explicitly stated" that Tennessee does not recognize a first party spoliation claim, "Tennessee federal district courts have consistently held that an independent tort claim for spoliation of evidence does not exist under Tennessee law."). Plaintiffs' reasons to change the Court's position are not persuasive.[4]

---

4       Plaintiffs argue that since the Tennessee Supreme Court has expressly adopted the tort of intentional interference with business relationships, *see Trau-Med of Am., Inc. v. Allstate Ins. Co.*,

13

Therefore, Defendants' motion to dismiss Plaintiffs' spoliation claims is **GRANTED** and the claims are dismissed.

I.  **Mr. Lambert's requests for costs and fees**

Mr. Lambert has "moved for costs and fees for the spoliation and negligence *per se* state law claims pursuant to Tenn. Code Ann. § 20-12-119(c)," and requests the Court to rule on whether such fees are permitted in a Federal Rule of Civil Procedure 12(b)(6) motion [Doc. 23, pg. 11]. Tenn. Code Ann. § 20-12-119(c) provides that "when a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure . . . the court shall award . . . costs and reasonable . . . attorney's fees" to the party against whom the claims were pending. Tenn. Code Ann. § 20-12-119(c)(1). By its own terms, this statute is not applicable. His motion for costs and fees is **DENIED**.

IV.  **CONCLUSION**

For the reasons stated, Defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART.**

SO ORDERED:

s/Clifton L. Corker
United States District Judge

---

71 S.W.3d 691 (Tenn. 2002), the Court ought to analogize Plaintiffs' spoliation claims to this tort because both involve intentional "intermeddling with another's probable expectancy." [Doc. 21, pg. 8; Doc. 22, pg. 8]. The Court declines to do so.